**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT MINEGAR,<br><br>　　　　　　Plaintiff,<br>v.<br><br>AMAZON.COM SERVICES INC.; JOHN DOES 1-5 AND 6-10,<br><br>　　　　　　Defendants. | Civ. A. No. 22-02162 (GC)(RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Amazon.com Services LLC[1] ("Defendant" or "Amazon") Motion to Dismiss Plaintiff Scott Minegar's ("Plaintiff") complaint (the "Complaint"). Plaintiff filed the Complaint against Defendant in the Superior Court of New Jersey, Somerset County on March 2, 2022. (Compl., ECF No. 1-1.) Defendant removed the case to this Court on April 13, 2022. (Notice of Removal, ECF No. 1.) On May 16, 2022, Defendant filed their Motion to Dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] (Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br. in Supp."), ECF No. 7-1.) Plaintiff filed his brief in opposition on June 7, 2022. (Pl.'s Br. in Opp'n ("Pl.'s Opp'n"), ECF No. 8.) Additionally, Defendant filed a reply to Plaintiff's opposition on June 14, 2022. (Def.'s Reply Br. ("Def.'s Reply"), ECF No. 9.) The Court has carefully considered the Parties'

---

[1] Defendant states that Amazon.com Services LLC is the proper entity that should have been named in this suit instead of Amazon.com Services Inc. (*See* ECF No. 7 at 1.)

[2] Hereinafter, any reference to "Rule" is referring to the Federal Rules of Civil Procedure.

submissions and decides this motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**, and Counts One, Two, Three, Four, and Seven of Plaintiff's Complaint are dismissed without prejudice.

## I.     BACKGROUND[3]

From December 2020 through February 2021, Plaintiff worked as a "Jam Clearer" for Defendant. (Compl. ¶ 4.) On February 15, 2021, Plaintiff felt a "pop" in his shoulder while loading packages in Defendant's warehouse. (*Id.* at ¶ 7.) Plaintiff alleges that his supervisor was present at the time of Plaintiff's alleged injury. (*Id.* at ¶ 7a.) Plaintiff's supervisor sent him to AmCare, which is Defendant's on-site emergency clinic. (*Id.* at ¶ 8.) AmCare provided Plaintiff with hot and cold packs and placed him on light duty. (*Id.* at ¶¶ 9,10.) Plaintiff alleges that Defendant denied his several requests to see a Workers' Compensation medical provider for the injury. (*Id.* at ¶ 11.) Plaintiff alleges that Defendant required him to be treated by AmCare on a semi-daily basis. (*Id.* at ¶ 12.) During this period, Plaintiff reported to AmCare that he was suffering from pain levels of ten out of ten. (*Id.* at ¶ 13.)

Plaintiff alleges that on or about March 2, 2021, Plaintiff demanded that Defendant refer him to a Workers' Compensation doctor, or he would seek legal representation. (*Id.* at ¶¶ 14,14a.) Defendant agreed to the request and Plaintiff scheduled an appointment for the following day. (*Id.* at ¶ 15.) Plaintiff then alleges that after he scheduled the appointment, Defendant's Human Resources Department called to suspend him for two (2) days for theft of property. (*Id.* at ¶ 17.) Specifically, Plaintiff alleges that he snacked on food items that fell off conveyor belts, which are unable to be repackaged and sold. (*Id.* at ¶¶ 18-21.) Plaintiff alleges that Defendant previously

---

[3] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

advised employees that they were permitted to consume these items, and allegedly, Plaintiff consumed these products with his supervisors and manager around the time he was suspended. (*Id.* at ¶¶ 22,23.)

On March 3, 2021, Plaintiff was treated at Concentra Urgent Care by Dr. Shanthi Reddy ("Dr. Reddy") and was diagnosed with Calcific Tendonitis. (*Id.* at ¶¶ 26, 27.) Plaintiff's employment was terminated by Defendant on the same day. (*Id.* at ¶ 28.) On March 9, 2021, Plaintiff had a follow-up visit with Dr. Reddy, and was diagnosed with a sprained left shoulder, traumatic tear of the supraspinatus tendon of the left shoulder, a partial tear of the left subscapularis tendon, and a tear of the left bicep muscle. (*Id.* at ¶ 30.)

The Complaint alleges seven causes of action: Count One (discrimination based on a disability under the New Jersey Law Against Discrimination ("NJLAD")), Count Two (perception of disability under the NJLAD), Count Three (failure to accommodate under the NJLAD), Count Four (failure to engage in the interactive process under the NJLAD), Count Five (Retaliation under the NJLAD), Count Six (*Lally v. Copygraphics, Inc.*) and Count Seven (equitable relief). (*See generally* Compl.) Defendant moves to dismiss Counts One, Two, Three, Four, and Seven of the Complaint. (Def.'s Br. in Supp. 1.) The Court will evaluate Counts One, Two, Three, Four, and Seven in turn.

II. **STANDARD OF REVIEW**

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted). When considering a Rule 12(b)(6) motion, the Court must conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the

elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement [to] relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. *Kwanzaa v. Tell*, No. 21-1939, 2022 WL 16756334, at *3 (3d Cir. Nov. 8, 2022) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (internal quotation omitted).

### III. DISCUSSION

#### A. Count One—Disability Under the NJLAD

The NJLAD proscribes employment discrimination on the basis of a disability. N.J. Stat. Ann. § 10:5-4.1 *et seq.* To properly assert a claim for discrimination based on a disability under the NJLAD, Plaintiff must allege that

> (1) plaintiff was handicapped or disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) plaintiff suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position.

*Victor v. State*, 952 A.2d 493, 501 (N.J. Super. Ct. App. Div. 2008), *aff'd as modified*, 4 A.3d 126 (N.J. 2010) (citing cases). First, Defendant challenges that "Plaintiff fails to allege that he could perform his essential job functions, with or without an accommodation, after his purported injury."

4

(Def.'s Br. in Supp. 4.) The Court agrees with Defendant that the Complaint is devoid of any allegation that Plaintiff could continue to perform the essential functions of his job with or without an accommodation.[4]

To satisfy the second element, Plaintiff must allege that he "(1) has the requisite skill, experience, education, and other job-related requirements of the position [in question], and (2) [he], with or without reasonable accommodation, c[ould] perform the essential functions of that position." *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d Cir. 2002). This element is essential to stating a claim for employment discrimination under the NJLAD because "[t]he NJLAD does not preclude employers from taking adverse employment actions against disabled individuals who are not able to perform the essential functions of their job." *Bertolotti v. AutoZone, Inc.*, 132 F. Supp. 3d 590, 599 (D.N.J. 2015) (quoting *White v. United Parcel Serv.*, Civ. No. 07–2464, 2008 WL 3895784, at *3 (D.N.J. Aug. 4, 2008)).

Here, Plaintiff does not allege whether he could perform the essential functions of a "jam clearer" with or without a reasonable accommodation. Therefore, under *Buskirk*, Plaintiff fails to state a claim for employment discrimination under the NJLAD and Count One will be dismissed without prejudice.[5] *Buskirk*, 307 F.3d at 168 (3d Cir. 2002); *see also Bobo*, 2014 WL 2215935, at

---

[4] In addition to failing to allege that he could perform the essential functions of a "jam clearer" with or without an accommodation, the Court also highlights that Plaintiff does not even allege the essential functions of the job of a "jam clearer."

[5] Although not contested by Defendant, the Court also notes that the Complaint does not appear to contain any allegation to support the fourth element under the NJLAD which states: "the employer sought another to perform the same work after plaintiff had been re-moved from the position." *Victor*, 952 A.2d at 501. Although the Court could possibly assume that Defendant sought another person to perform the same work as Plaintiff and the Court "must take Plaintiff's facts as true for purposes of a motion to dismiss and make reasonable inferences in his favor, the Court is not required to read facts into Plaintiff's [] Complaint that simply do not exist." *Bobo v. Wildwood Pub. Sch. Bd. Of Educ.*, Civ. No 13-5007, 2014 WL 7339461, at *15 (D.N.J. Dec. 23, 2014).

*7 (dismissing the complaint in part because Plaintiff failed to allege that he could continue to perform the essential functions of a job with an accommodation.)

### B. Count Two—Perception of Disability Under the NJLAD

The NJLAD prohibits an employer from taking an adverse employment action[6] against an employee based on a perceived disability. *Glenn v. Lawrence Twp. Police Dep't*, Civ. No. 10-3121, 2012 WL 933335, *7 (D.N.J. Mar. 20, 2012). "In order to demonstrate that a plaintiff is perceived to have a disability, the plaintiff must show that the employer entertain[ed] misperceptions about the [plaintiff], either believing that the individual has a substantially limiting impairment that he or she does not have or that the individual has a substantially limiting impairment when, in fact, the impairment is not as limiting as the employer believes." *Riconda v. US Foods, Inc.*, Civ. No. 19-1111, 2019 WL 4254389, at *4 (D.N.J. Sept. 9, 2019) (quoting *Photis v. Sears Holding Corp.*, Civ. No. 11-6799, 2013 WL 3872519, at *7 (D.N.J. July 25, 2013)) (internal quotations omitted).

Here, Plaintiff has not alleged sufficient facts to establish that Defendant perceived him as disabled. While Plaintiff alleges that Defendant was aware that Plaintiff suffered a "pop" in his shoulder, sought treatment by Defendant's onsite emergency clinic, and reported "pain levels of ten out of ten," the Complaint suggests that Plaintiff continued to work daily following the incident. (Compl. ¶¶ 7, 8, 13.) As a result, Plaintiff fails to establish that Defendant perceived him as disabled. *Spagnoli v. Brown & Brown Metro, Inc.*, Civ. No. 06-414, 2007 WL 2362602, at *9 (D.N.J. Aug. 15, 2007) (There is no evidence which indicates that Plaintiff's medical condition

---

Plaintiff has an affirmative duty to allege all the elements of a cause of action with some "factual enhancement" to properly state a claim for a cause of action. *Iqbal*, 556 U.S. at 678.

[6] Retaliatory actions is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J. Stat. Ann. § 34:19-2

was anything but a condition of limited duration..."); *see Photis*, 2013 WL 3872519, at *7 (stating "Plaintiff, however, has failed to establish that Defendants perceived him as being disabled. Plaintiff worked every day from the date he returned to work until the date he was suspended, making it unlikely that someone would think he was disabled."). Additionally, although Plaintiff alleges that Defendant was aware that Plaintiff sought treatment from a Workers' Compensation doctor, "the Complaint does not state that the employer mistakenly believed that this [] was indicative of a more serious condition. It does not allege that the employer jumped to the conclusion, for example, that the plaintiff would be out of work for an extended period of time." *Riconda*, 2019 WL 4254389, at *4. As a result, Count Two is merely a legal conclusion as Plaintiff does not allege sufficient factual material to establish that Defendant perceived Plaintiff's shoulder injury as a disability at the time any adverse employment action was taken by Defendant. For these reasons, Count Two is dismissed without prejudice.

### C. Count Three—Failure to Accommodate Under the NJLAD and Count Four—Failure to Engage in the Interactive Process Under the NJLAD.[7]

The four elements under a failure to accommodate claim are: "(1) [Plaintiff] was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006).[8] To assert a claim

---

[7] The Court combines its analysis of Counts Three and Four into a single subsection because "claims for "failure to engage in the interactive process and failure to accommodate [ ... are] best analyzed as a single count...." *Mickens v. Lowe's Companies, Inc.*, Civ. No. 07-6148, 2010 WL 2682069, at *3 (D.N.J. July 2, 2010); *see also McQuillan v. Petco Animal Supplies Stores, Inc.*, Civ. No. 13-5773, 2014 WL 1669962, at *6 (D.N.J. Apr. 28, 2014) ("Because both counts relate to a claim for failure to accommodate under the NJLAD, the Court will analyze them together.").

[8] Some examples of reasonable accommodations under the New Jersey Administrative Code are

for failure to engage in the interactive process, Plaintiff needs to allege that Defendant failed to make a good-faith effort to seek accommodations for Plaintiff. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999).

Defendant argues that Counts Three and Four should be dismissed because Plaintiff fails to allege that Defendant knew of his disability and that Plaintiff fails to allege that he requested an accommodation. (Def.'s Br. in Supp. 7-8.) The Court will address these two sub-arguments in turn.

Plaintiff alleges in the Complaint that Defendant was aware that Plaintiff was experiencing a shoulder impairment, Plaintiff sought medical treatment, and Plaintiff was experiencing pain from the incident. (Compl. ¶¶ 7, 8,13.) However, Plaintiff does not allege sufficient facts to demonstrate that his injury was of a sufficient degree to constitute a disability under the NJLAD[9]

---

> i. Making facilities used by employees readily accessible and usable by people with disabilities;
> ii. Job restructuring, part-time or modified work schedules or leaves of absence;
> iii. Acquisition or modification of equipment or devices; and
> iv. Job reassignment and other similar actions.

N.J. Admin. Code § 13:13-2.5(b)(1)(i)-(iv).

[9] Disability is defined as

> Disability" means physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness including epilepsy and other seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impairment, deafness or hearing impairment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or any mental, psychological or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques. Disability shall also mean AIDS or HIV infection.

and that Defendant was aware of this disability at the time any adverse employment action was taken by Defendant. *See Riconda*, 2019 WL 4254389, at *4 (stating "[t]he Complaint does not state that the employer mistakenly believed that [Plaintiff's condition] was indicative of a more serious condition. It does not allege that the employer jumped to the conclusion, for example, that the plaintiff would be out of work for an extended period of time."). In sum, Plaintiff does not properly allege sufficient facts that allows the Court to reasonably infer that Defendant knew he was disabled at the time any adverse employment action was taken by Defendant.

With respect to Defendant's second argument, Plaintiff alleges that Defendant failed to offer him a reasonable accommodation or engage in the interactive process. (Compl. ¶¶ 29, 47, 50.) Plaintiff contends that Defendant did not provide Plaintiff with a reasonable accommodation when Plaintiff sought the medical attention of an offsite doctor. (Pl.'s Opp'n 12.) However, this allegation was not in the Complaint; it was in Defendant's brief. Following *Kwanzaa* and *Pension Benefit*, the Court is not free to consider allegations solely contained in the brief and omitted from the Complaint. *See Kwanzaa*, 2022 WL 16756334, at *3; *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

To the extent Plaintiff is alleging that Defendant failed to accommodate him by refusing to permit Plaintiff to visit a Workers Compensation medical provider for several weeks (Compl. ¶¶ 11, 14, 14a) such allegations are not clear to the Court based on the Complaint as currently pled by Plaintiff, particularly in light of Plaintiff's further allegations that Defendant scheduled Plaintiff to see a Workers' Compensation doctor (Compl. ¶ 15) and placed Plaintiff on "light duty" following his injury (*Id.* at ¶10).

---

N.J. Stat. Ann. § 10:5-5(q).

The Court dismisses Counts Three and Four without prejudice because the Complaint fails to adequately plead that Defendant knew of Plaintiff's disability at the time any adverse employment action was taken by Defendant and that Plaintiff requested an accommodation.

### D. Count Seven—Equitable Relief is Dismissed

Claim Seven of Plaintiff's Complaint seeks equitable relief. Equitable relief is not a cause of action or "a standalone claim." *Syder v. Express Servs., Inc*, Civ. No. 20-11013, 2022 WL 577964, at *2 n.3 (D.N.J. Feb. 24, 2022). Instead, it is a form of relief and should be pled as such. *Id.* (dismissing a claim for equitable relief with prejudice because Plaintiff ignored a prior court opinion that equitable relief should be pled in the prayer for relief section). Therefore, Count Seven will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, and for good cause shown, Counts One, Two, Three, Four, and Seven of the Complaint are **DISMISSED WITHOUT PREJUDICE**, and the Court grants Plaintiff leave to amend the Complaint within thirty (30) days of the entry of the accompanying Order.

**Dated**: February 27, 2022

**GEORGETTE CASTNER**
**United States District Judge**